**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| SMITHGROUP, INC.,<br>*f/k/a SmithGroup JJR, Inc.*<br><br>Plaintiff,<br><br>v.<br><br>SKANSKA USA BUILDING INC.,<br><br>Defendant. | ) | Civil Action No. 8:20-cv-02499-TDC |

**SKANSKA'S ANSWER TO SMITHGROUP, INC.'S COMPLAINT AND COUNTERCLAIM**

Defendant/Counterclaim-Plaintiff Skanska USA Building Inc. ("Skanska"), by and through undersigned counsel, hereby files this Answer to the Complaint filed by Plaintiff/Counterclaim-Defendant SmithGroup, Inc., f/k/a SmithGroup, JJR, Inc. ("SmithGroup") and Counterclaim against SmithGroup, stating as follows:

## ANSWER

### Parties

1. Skanska admits only that SmithGroup is a stock corporation organized under the laws of the State of Michigan and having its principal place of business at 500 Griswold Street, Suite 1700 in Detroit, Michigan, and that SmithGroup provides professional architectural and engineering design services. Skanska lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1, and therefore denies them.

2. Admitted.

3. Paragraph 3 is a jurisdictional statement containing legal conclusions to which no response is required.

4. Admitted.

5. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the construction of a new headquarters building for the District of Columbia Water and Sewer Authority ("D.C. Water Headquarters Project" or the "Project") as alleged in Paragraph 5 (the "Design Agreement"). The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 5.

6. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the Project as alleged in Paragraph 6. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 6.

**Facts**

7. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the Project as alleged in Paragraph 7. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 7.

8. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the Project as alleged in Paragraph 8. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 8.

9. Denied.

10. Skanska admits only that it directed SmithGroup to perform a limited amount of additional services related to the Project, but states that the majority of the "additional services" to which SmithGroup refers in Paragraph 10 were in fact remedial or corrective work required under the Design Agreement and necessary due solely to SmithGoup's late and deficient designs, errors and omissions. Skanska further states that any payments that would otherwise be due SmithGroup for these "additional services" were rightfully withheld and offset by damages SmithGroup is obligated to pay Skanska. Skanska denies the remaining allegations of Paragraph 10.

11. Skanska admits only that it directed SmithGroup to perform certain modifications related to the Project, but states that the majority of the "modifications" to which SmithGroup refers in Paragraph 11 were in fact remedial or corrective work required under the Design Agreement and necessary due solely to SmithGoup's late and deficient designs, errors and omissions. Skanska further states that any payments that would otherwise be due SmithGroup for these "modifications" were rightfully withheld and offset by damages SmithGroup is obligated to pay Skanska. Skanska denies the remaining allegations of Paragraph 11.

12. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the Project as alleged in Paragraph 12. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 12.

13. Denied.

**Count One – Breach of Contract**

14. Skanska incorporates its prior responses to Paragraphs 1 through 13 as if fully restated herein.

15. Skanska admits only that Skanska contracted with SmithGroup to perform services

in connection with the Project as alleged in Paragraph 15. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent characterization thereof. Skanska denies the remaining allegations in Paragraph 15.

16. Skanska admits only that it directed SmithGroup to perform certain additional services related to the Project. Skanska denies the remaining allegations in Paragraph 16.

17. Denied.

18. Denied.

**Count Two – Quantum Meruit**

19. Skanska incorporates its prior responses to Paragraphs 1 through 18 as if fully restated herein.

20. Skanska admits only that it directed SmithGroup to perform a limited amount of certain additional services related to the Project. Skanska denies the remaining allegations in Paragraph 20.

21. Skanska admits only that it directed SmithGroup to perform a limited amount of certain additional services related to the Project. Skanska denies the remaining allegations in Paragraph 21.

22. Denied.

**Count Three – Promissory Estoppel**

23. Skanska incorporates its prior responses to Paragraphs 1 through 22 as if fully restated herein.

24. Skanska admits only that Skanska contracted with SmithGroup to perform services in connection with the Project as alleged in Paragraph 24. The Design Agreement is a document in writing, the terms of which speak for themselves, and Skanska denies any inconsistent

characterization thereof. By way of further response, Skanska admits that it directed SmithGroup to perform certain additional services related to the Project. Skanska denies the remaining allegations in Paragraph 24.

25. Denied.

26. Denied.

**Prayer for Relief**

To the extent that that SmithGroup's Prayer for Relief is deemed to include pleaded allegations, Skanska denies these allegations in their entirety.

**Affirmative Defenses**

1. The Complaint fails to state a claim against Skanska upon which relief can be granted.

2. The Complaint fails to state sufficient facts in support of a claim against Skanska.

3. The Complaint is barred in whole or in part by SmithGroup's breaches of the Design Agreement.

4. The Complaint is barred in whole or in part by the legal doctrines of setoff and/or recoupment.

5. The Complaint is barred in whole or in part by the doctrines of waiver, estoppel, unclean hands, and/or release.

6. The Complaint is barred in whole or in part by the doctrine of accord and satisfaction.

7. The Complaint is barred in whole or in part by the failure of SmithGroup to provide required notice.

8. The Complaint is barred to the extent that SmithGroup failed to mitigate its

damages.

9. Skanska expressly reserves the right to amend its defenses and to plead any other defense as may be developed through discovery or trial.

WHEREFORE, Defendant/Counter-Plaintiff, Skanska USA Building Inc., respectfully requests that the Court dismiss the Complaint of Plaintiff/Counter-Defendant, SmithGroup, Inc., f/k/a SmithGroup, JJR, Inc., in its entirety and with prejudice, and enter judgment in Skanska's favor and against SmithGroup, together with costs, expenses, and attorney's fees pursuant to Section 9. 6 of the Design Agreement, and such other and further relief as the Court deems just and equitable.

## COUNTERCLAIM

COMES NOW, Defendant/Counter-Plaintiff, Skanska USA Building Inc. ("Skanska" or "Design/Builder"), by and through its undersigned counsel, and for its Counterclaim against Plaintiff/Counter-Defendant, SmithGroup, Inc., f/k/a SmithGroup, JJR, Inc. ("SmithGroup" or "Designer") (collectively referred to as the "Parties" hereinafter), states as follows:

### Parties

1. Skanska is a corporation organized under the laws of Delaware with a principal place of business located at 389 Interpace Parkway, 5th Floor, Parsippany, New Jersey 07054.

2. Upon information and belief, SmithGroup is a corporation organized under the laws of the State of Michigan with a principal place of business located at 500 Griswold Street, Suite 1700, Detroit, Michigan 48226.

### Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. § 1332. Subject matter jurisdiction is proper in this Court because the amount in

controversy exceeds $75,000.00 and the dispute is between citizens of different states.

4. Skanska entered into a design agreement with SmithGroup dated April 17, 2015 ("Design Agreement"), under which SmithGroup agreed to perform certain design services on the Project as defined therein. *See* Pl.'s Compl., Ex. A. Per Section 10.3 of the Design Agreement, for any action or proceeding involving claims and disputes between Skanska and SmithGroup arising out of, or in connection with, the Design Agreement, the Parties agreed that the location of the federal or state court in which Skanska's home office out of which the project was being performed would have exclusive jurisdiction over the proceeding. *See* Pl.'s Compl., Ex. A.

5. Skanska performed the project out of its home office located at 700 King Farm Road, Suite 200, Rockville, Maryland 20850. *See* Pl.'s Compl., Ex. A, Article 1. As such, venue is proper with this Court.

**Statement of Facts**

6. On or about March 13, 2015, Skanska entered into a contract (the "Prime Contract") with the District of Columbia d/b/a District of Columbia Water and Sewer Authority (the "Owner"), under which Skanska agreed to perform certain services as defined therein concerning the design and construction of the D.C. Water New Headquarters Building located at 125 O Street SE, Washington, D.C. 20005 (the "D.C. Water Headquarters Project" or the "Project").

7. On or about April 17, 2015, Skanska entered into the Design Agreement with SmithGroup, dated April 17, 2015, under which SmithGroup agreed to perform certain design services on the Project as defined therein. *See* Pl.'s Compl., Ex. A. Pursuant to the Design Agreement, SmithGroup was obligated to provide all necessary architectural and engineering services required by Skanska for the Project ("Design Services"). *See* Pl.'s Compl., Ex. A., Sections 2.2.2, 2.3.10.

8. The Design Agreement also required that SmithGroup perform the contractually obligated Design Services in satisfaction of the requirements called for in the Project Budget and Schedule, as well as perform the Design Services with the care and skill ordinarily used by members of the profession (the "Standard of Care"). *See* Pl.'s Compl., Ex. A., Design Agreement Ex. PS-1, Section 3.1.

9. Through no fault of Skanska, SmithGroup failed to perform its work in accordance with the Design Agreement and, in addition, failed to maintain the Project Budget and Schedule and to perform its services in accordance with the applicable Standard of Care. Skanska's ability to perform under the Prime Contract and satisfy the Owner was significantly impacted by SmithGroup's late and deficient designs, and Skanska incurred significant damages as a result of SmithGroup's poor performance.

10. SmithGroup's errors, omissions, and deficiencies caused schedule impacts which delayed the foundation and framing work for months, caused significant downstream delays to Skanska and its subcontractors, delayed Substantial Completion, and caused Skanska to remain on the Project for many months following Substantial Completion to correct major and well-documented design deficiencies.

11. As an example, on or about August 29, 2018, the Owner informed Skanska that the Heating, Ventilation, and Air Conditioning ("HVAC") System had design defects or deficiencies, causing the inability to support climate control of the Project. The HVAC System was designed by SmithGroup.

12. On August 30, 2018, Skanska informed SmithGroup of these defects and deficiencies, issuing a written Notice of Defective or Deficient Work as required by the Design Agreement. *See* Ex. 1. As a direct and proximate result of these defects and deficiencies in

SmithGroup's design of the HVAC system, Skanska incurred additional costs for the redesign and rework of the HVAC system, as well as interim maintenance costs prior to the Owner's acceptance of the HVAC system.

13. In addition to the defects and deficiencies associated with the HVAC redesign discussed above, due to SmithGroup's many errors and omissions, Skanska has, throughout the Project, been forced to issue change orders to subcontractors for additional work involving, but not limited to, the HVAC system and duct work, site concrete, steel, drywall, electrical work, plumbing, and architectural finishes. SmithGroup is responsible for all costs expended by Skanska to remediate the resultant damage caused by the errors and omissions of SmithGroup's Design Services on the Project.

14. Skanska maintained a log tracking SmithGroup's design errors and omissions, frequently provided SmithGroup with information and correspondence, and had numerous discussions with SmithGroup regarding its poor performance and Skanska's right to recover damages.

15. Section 5.1 of the Design Agreement states (in relevant part):

> If the progress or completion of the Project is delayed by reason of any fault, neglect, error, or omission of Designer . . . Designer shall compensate Design/Builder for any and all costs, losses, damages and expenses, including reasonable attorney's fees, Design/Builder incurs as a result of Designer's negligent acts, errors or omissions, including but not limited to, damages claims or losses incurred by the Design/Builder under the Design-Build Agreement or its separate Project related agreements, acceleration costs Design/Builder incurs attempting to overcome the delay caused by Designer or otherwise sustains, and/or extended general condition expenses and other delay costs and damages Design/Builder incurs as a result of Designer's delay.

*See* Pl.'s Compl., Ex. A. Section 5.1.

16. In accordance with Section 5.1 of the Design Agreement, Skanska is entitled to

compensation for the delays resulting from the errors and omissions of SmithGroup in its development and management of the Design Services on the Project. *See* Pl.'s Compl., Ex. A.

17. Skanska performed all of its obligations under the Design Agreement.

18. Skanska has incurred damages to correct SmithGroup's errors, omissions, and deficiencies in its performance under the Design Agreement in the amount of at least FIVE MILLION, TWENTY FIVE THOUSAND DOLLARS ($5,025,000).

**COUNT I**
**(Breach of the Design Agreement – Defective HVAC Design)**

19. Skanska repeats and incorporates by reference the allegations set out above in Paragraphs 1 through 18 of this Counterclaim.

20. SmithGroup materially breached the Design Agreement related to the HVAC System by, *inter alia*:

a. providing an HVAC System with design defects and deficiencies, causing the inability to support climate control in the new headquarters building;

b. providing an HVAC System with design defects and deficiencies causing excessively loud noise, rendering the Project unusable for its intended purposes;

c. failing to meet the Standard of Care in designing the HVAC System, as prescribed by Section 3.1 of Exhibit PS-1 of the Design Agreement;

d. failing to perform its Design Services related to the HVAC System in satisfaction with the Project Budget and Schedule as prescribed by Section 3.1 of Exhibit PS-1 of the Design Agreement;

e. failing to ensure the performance of the Design Services related to the

HVAC System and to take responsibility for any and all errors, acts, or omissions related to the performance of HVAC design as prescribed by Section 3.4 of the Design Agreement;

f. failing initially to address the HVAC System design defects and deficiencies upon discovery and notification from Skanska as prescribed by Section 8.3 of Exhibit PS-1 of the Design Agreement, which caused the Owner to refuse to accept the HVAC system and caused Skanska to incur substantial interim maintenance costs prior to the Owner's acceptance of the HVAC System; and

g. providing a redesign of the HVAC System that has, to this day, still not fully passed the required testing standards and will necessitate further redesign by Skanska.

21. In accordance with Section 8.3 of Exhibit PS-1 of the Design Agreement, Skanska engaged third-party consultants and paid numerous subcontractors to address and correct SmithGroup's deficient design, and incurred substantial internal expenses managing the redesign process.

22. As a direct and proximate result of SmithGroup's material breaches of the Design Agreement related to its HVAC system design, Skanska has suffered and is entitled to recover damages from SmithGroup in excess of $1,500,000.

**COUNT II**
**(Breach of the Design Agreement – Other Errors & Omissions)**

23. Skanska repeats and incorporates by reference the allegations set out above in Paragraphs 1 through 22 of this Counterclaim.

24. SmithGroup materially breached the Design Agreement related to its design errors

and omissions (excluding its defective HVAC design), by, *inter alia*:

a. failing to meet the Standard of Care as prescribed by Section 3.1 of Exhibit PS-1 of the Design Agreement;

b. failing to perform its Design Services in satisfaction with the Project Budget and Schedule as prescribed by Section 3.1 of Exhibit PS-1 of the Design Agreement;

c. failing to ensure the performance of the Design Services and take responsibility for any and all errors, acts, or omissions related to the performance of the Design Services as prescribed by Section 3.4 of the Design Agreement; and

d. performing work with defects and deficiencies related to, among other scopes of work, duct work, site concrete, steel, drywall, electrical work, plumbing, and architectural finishes.

25. SmithGroup is responsible for all costs expended by Skanska to correct SmithGroup's design errors and omissions on the Project.

26. As a direct and proximate result of SmithGroup's design errors and omissions (excluding its defective HVAC System design), Skanska has suffered damages in excess of $1,800,000.

**<u>COUNT III</u>**
**(Breach of the Design Agreement – Delays to Project Schedule)**

27. Skanska repeats and incorporates by reference the allegations set out above in Paragraphs 1 through 26 of this Counterclaim.

28. SmithGroup materially breached the Design Agreement by, *inter alia*:

a. failing to perform its Design Services in satisfaction with the Project

Budget and Schedule as prescribed by Section 3.1 of Exhibit PS-1 of the Design Agreement;

b. failing to ensure the performance of the Design Services in a timely manner and take responsibility for any and all errors, acts, or omissions related to the performance of the Design Services that caused delay as prescribed by Section 3.4 of the Design Agreement;

c. delaying the progress and completion of the Project due to its fault, neglect, errors, and omissions in performing its Design Services; and

d. failing to mitigate such delay.

29. In accordance with Section 5.1 of the Design Agreement, Skanska is entitled to compensation for the delays caused by SmithGroup.

30. As a direct and proximate result of SmithGroup's delays to the Project Schedule, Skanska has suffered damages in excess of $1,100,000.

**COUNT IV**
**(Indemnity)**

31. Skanska repeats and incorporates by reference the allegations set out above in Paragraphs 1 through 30 of this Counterclaim.

32. In accordance with Section 5.1 of the Design Agreement, SmithGroup is required to indemnify and compensate Skanska for "any and all costs, losses, damages and expenses, including reasonable attorney's fees," Skanska incurs as a result of SmithGroup's negligent acts, errors or omissions." *See* Pl.'s Compl., Ex. A.

33. Skanska has incurred, and will continue to incur, liability, damages, costs and expenses, including attorney's fees, as a direct consequence of SmithGroup's material breaches of its obligations under the Design Agreement, to include liability assessed and damages claimed by

the Owner, third-party subcontractor Icon Exterior Building Solutions, LP ("ICON"), and any and all other third-parties.

34. Skanska has incurred damages in excess of $300,000 arising out of the Owner's claims, actions, proceedings, liabilities, losses, damages, costs and expenses, including legal fees and disbursements, which resulted from SmithGroup's material breaches of its obligations under the Design Agreement, or negligent acts, errors, omissions.

35. Skanska has incurred damages in excess of $325,000 arising out of ICON's claims, actions, proceedings, liabilities, losses, damages, costs and expenses, including legal fees and disbursements, which resulted from SmithGroup's material breaches of its obligations under the Design Agreement, or negligent acts, errors, omissions.

36. To-date, Skanska has incurred damages in excess of $625,000, for which SmithGroup must indemnify Skanska in accordance with the Design Agreement.

WHEREFORE, Defendant/Counter-Plaintiff, Skanska USA Building Inc., respectfully requests that the Court enter judgment in its favor and against Plaintiff/Counter-Defendant, SmithGroup, Inc., f/k/a SmithGroup, JJR, Inc., in the amount of at least FIVE MILLION, TWENTY FIVE THOUSAND DOLLARS ($5,025,000), comprised of:

a. at least $1,500,000 for SmithGroup's defective HVAC System design (Count I);

b. at least $1,800,000 for SmithGroup's other Errors and Omissions (Count II)

c. at least $1,100,000 for SmithGroup's Delays to the Project Schedule (Count III)

d. at least $625,000 for SmithGroup's indemnity obligations to Skanska (Count IV);

plus pre and post judgment interest, attorney's fees and costs pursuant to Section 9. 6 of the Design Agreement, and such other relief as the Court deems just and proper.

Dated: September 25, 2020
Tysons Corner, VA

Respectfully submitted,

**VARELA, LEE, METZ & GUARINO, LLP**

*/s/ Thomas S. O'Leary*
Thomas S. O'Leary (USDC MD Bar No. 20442)
1600 Tysons Boulevard, Suite 900
Tysons Corner, VA 22102
Tel: (703) 454-0170
Fax: (703) 454-0169
toleary@vlmglaw.com

*Counsel for Defendant/Counterclaimant*
*Skanska USA Building Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing Defendant's Answer to Complaint and Counterclaim was electronically filed and served via the CM/ECF system, on this 25th day of September, 2020, with copies to:

Leslie P. Machado, Esq. (USDC MD Bar No. 14952)
Alison C. Duffy, Esq. (USDC MD Bar No. 21002)
O'Hagan Meyer, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
lmachado@ohaganmeyer.com
aduffy@ohaganmeyer.com

*/s/ Thomas S. O'Leary*
Thomas S. O'Leary